UNITED STATES, Appellee,

v.

Paul J. UNDERWOOD III, Senior
Airman, U.S. Air Force,
Appellant.

No. 98–0275.
Crim.App. No. 32633.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 6, 1998.

Decided May 11, 1999.

SULLIVAN, J., delivered the opinion of
the Court, in which COX, C.J., CRAWFORD
and GIERKE, JJ., and EVERETT, S.J.,
joined.

For Appellant: *Captain Patience E.
Schermer* (argued); *Colonel Douglas H.
Kohrt* (on brief); *Captain Harold M.
Vaught.*

For Appellee: *Major Steven B. Thompson*
(argued); *Lieutenant Colonel Anthony P.
Dattilo* and *Lieutenant Colonel Michael J.
Breslin* (on brief); *Major Ronald A. Rodg-
ers.*

Judge SULLIVAN delivered the opinion
of the Court.

During October of 1996, appellant was
tried by a general court-martial consisting of
officer and enlisted members at Elmendorf
Air Force Base, Alaska. Contrary to his
pleas, he was found guilty of rape, forcible
sodomy, indecent assault of A.G., and provid-
ing alcohol to A.G. while she was a minor, in
violation of Articles 120, 125, and 134, Uni-
form Code of Military Justice, 10 USC
§§ 920, 925, and 934, respectively. He was
sentenced to a dishonorable discharge, 3

years' confinement, total forfeitures, and reduction to E–1. On March 26, 1997, the convening authority approved the adjudged sentence but waived the total forfeitures for 6 months and ordered their payment as support to appellant's family. The Court of Criminal Appeals affirmed the findings and approved sentence. 47 MJ 805 (1997).

This Court granted review on June 22, 1998, on the following issues:

## I.

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT FOUND THAT THE CONVENING AUTHORITY'S WITHDRAWAL AND RE–REFERRAL OF CHARGES WAS PROPER, EVEN THOUGH SUCH ACTION UNDENIABLY CIRCUMVENTED THE MILITARY JUDGE'S RULING DENYING THE PROSECUTION'S REQUEST FOR A CONTINUANCE OF THE PROCEEDINGS.

## II.

WHETHER THE APPLICATION OF ARTICLES 57(a) AND 58b, UCMJ, VIOLATE THE *EX POST FACTO* CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO APPELLANT.

We hold that the Court of Criminal Appeals did not err when it held that the convening authority's withdrawal of charges from a prior court-martial was proper within the meaning of RCM 604(b), Manual for Courts–Martial, United States (1998 ed.), and their re-referral to the present court-martial was lawful. *See United States v. Koke*, 34 MJ 313, 315 (CMA 1992); *United States v. Blaylock*, 15 MJ 190, 195 (CMA 1983).

The Court of Criminal Appeals summarized the facts of this case concerning the first granted issue:

> The offenses for which appellant was convicted occurred in Anchorage, Alaska. On or about 4 July 1995, AG, who then was 20 years old, reported to local police authorities that appellant raped her on or about 2

July 1995. In early August 1995, Alaska state prosecutors determined not to pursue action against appellant, and the Anchorage Police Department report was referred to the Air Force Office of Special Investigation (AFOSI) detachment at Elmendorf Air Force Base (AFB), Alaska. After receipt of the AFOSI report in December 1995, appellant's commander, on 2 February 1996, preferred charges of rape, forcible sodomy, indecent assault, and providing alcohol to a minor. An additional charge of rape of LM was preferred against appellant on 9 February 1996.

> These charges were referred for trial on 1 April 1996. *The original trial date was 3 June 1996, but an unopposed defense request for delay until 10 June 1996 was granted by the military judge. On 3 June 1996, the Government requested a delay until 28 June 1996.* The reason provided by the Government for the delay was witness availability problems. Specifically, one of the putative victims, AG, had received an opportunity for long awaited employment with Alaska Airlines, and the job required training in Seattle, Washington, for the remainder of June. Further, AG did not want her prospective employer to know anything about the trial, and she asked the Government to seek a delay. Faced with these circumstances, the Government opted not to subpoena AG but seek the delay. In an RCM 802 session, the military judge denied the delay. *On 5 June 1996, at another RCM 802 session, the Government formally requested the military judge to reconsider his decision denying the delay,* but the military judge adhered to his initial decision and again denied the request for delay. After consulting with both putative victims, and receiving advice from the staff judge advocate, *on 7 June 1996, the convening authority withdrew all charges and, de facto, dismissed them,* as appellant's commander again preferred the charges (the convening authority's letter reflects only that the charges were withdrawn; no disposition was mentioned; *see United States v. Britton*, 26 MJ 24 (CMA 1988); *United States v. Gray*, 26 MJ 16,

21 (CMA 1988)(Everett, C.J., concurring in result); *United States v. Weatherspoon,* 39 MJ 762, 766 (ACMR 1994)).

*The charges were again investigated, Article 32, UCMJ, 10 USC § 832, on 23 July 1996, and were referred for trial on 16 August 1996* (the second referral failed to instruct that the rape charges were referred as non-capital, but all parties at the trial agreed that it was an oversight and tried the case as a non-capital case). By the time all the parties' schedules and the circuit's docket were reconciled, the Chief Circuit Military *Judge set 7 October 1996 as the trial date, on which date proceedings commenced.*

The record and allied papers also reflect another salient event to which the military judge alludes but without elaboration: on 22 May 1996, a second additional charge (initially, the charge involving LM was Additional Charge I) was preferred against appellant for divers rapes of his former wife, RL, while they were married. On 30 May 1996, the Investigating Officer recommended the charge and specification not be referred for trial due to insufficient evidence of force. On 12 June 1996, the convening authority accepted this recommendation and directed "withdrawal" of the charge and specification and returned it to appellant's commander for disposition pursuant to RCM 404(b). We infer it eventually was dismissed.

47 MJ 807-08 (emphasis added.)

At an Article 39(a), UCMJ, 10 USC § 839(a), session during the second court-martial, the defense moved to dismiss with prejudice all the charges referred to it on the grounds of a lack of jurisdiction. In the alternative, it requested that the charges involving A.G. be dismissed with or without prejudice. The military judge, the same judge who had denied the Government's request for a continuance at the first court-martial, denied this motion. The record states:

MJ: I've had a chance to review the facts stipulated by the parties and reviewed the law. I'll [sic] guess I'll amplify the facts. I won't change them any, but just to make sure the record understands what was go-ing on in the previous trial, Lieutenant Colonel Hasskamp was originally detailed as is mentioned in the stipulated facts. He granted a delay and the triggering event for that delay was adding another additional charge and the case became mine because he had a conflict on the agreed upon date and I emphasize "agreed upon date." At that point in time, the Government agreed to try this case on whatever it was, 10 June, and I would have assumed that they would have coordinated with their witnesses and that all the things necessary to be prepared to try the charges that were known to them at that point in time and so that was a factor in my decision to be somewhat hard-nosed with the Government about going to trial especially when the triggering event did not come to pass and I wasn't privy to what was going on, but the triggering event was the additional charge and the additional charge, at that time, had not been referred. I was not aware that it was not going to be referred.

So, the reason for the delay wasn't happening and then the agreed upon date was no longer a good date and it was somewhat irritating. So, therefore, part of my process of holding the Government's feet to the fire was they had done kind of a sloppy job of managing this case and when I gave them the choice of what to do in the sense of if you're going to go on the date scheduled, you'll have some choices to make. *One of the choices I anticipated they might do is withdraw these charges, but if they did that they'd have to go back to the convening authority and explain why we're doing this and I thought that might be a good management lesson for the prosecution of this case, so that was not shocking to me that they would withdraw the charges. Nor was it a shock to me that they re-referred the charges.*

Now, had the Government been able to go to trial on the 28th of June, I think was the day they requested.

CTC: The 28th of May or the 10th of June?

MJ: No, the date they requested. They had requested, I think, 28 June.

CTC: Oh, I see. Yes, your Honor.

MJ: *Had they been able to go on 28 June, then they would have thwarted my ruling, but they couldn't do that, so my ruling which denied a continuance as far as based on the facts and the law was not thwarted. The Government did not get to do what they wanted to do which was go to trial with all these charges on the 28th of June 1996. Their choice, if they chose to go forward, was to do it at some date down the road.* Before doing that, they would have to re-prefer, have another investigation providing the accused additional benefits, additional inquiries, additional opportunity for an investigating officer to recommend it not go to trial, additional opportunity for the convening authority to decide not to take these charges to this forum or to a different forum and that's what did transpire in this case.

So, the bottom line is, your Motion is Denied. *I see no interference at all with this court in any manner.* The convening authority exercised prosecutorial discretion as to what he and his lawyers chose to do after this case ended the first time.

\* \* \*

So, the facts are pretty much as agreed to by the parties. I reserve the right to go through the law a little more specifically at the end of the trial and make conclusions of law that are, I guess, more detailed should I find it necessary, but the bottom line is *I see even no appearance of interference with the judge's ruling. A judge's ruling is—if you're going to go to trial on June 10th with all these charges or you're not going to go to trial and that's what happened. They didn't go to trial and that's fine.* There's a long and involved process which got us here today which is in the discretion of the convening authority.

We're not going to a different forum. Charges haven't been drastically altered. I have no evidence of an improper motive before me. So, other than balance what the convening authority assumes his various interests are and get us to trial at a later date with all the charges before the court today.

So, as I said, the Motion is denied.

This is a matter of judicial analysis. In some ways, what I did was I forced a dismissal without prejudice. I mean, they withdrew the charges. It's almost analogous to a 707 violation to note no prejudice. What happens is you start all over again and the opposite of that is I was intending the case to go sooner than later.

(Emphasis added.)

— — —

Appellant asserts that the Court of Criminal Appeals erred in holding that the convening authority's withdrawal of the charges in this case from a prior court-martial was "proper" within the meaning of RCM 604(b),[1] and that his re-referral of the charges to the present court-martial was also lawful. He also contends that the lower appellate court erred in concluding that, if there was legal error in this case under RCM 604(b), it caused him no prejudice. We agree with the court below that the convening authority's withdrawal was proper and his re-referral action was neither unlawful nor unfairly prejudicial to appellant. *See generally Vanover v. Clark,* 27 MJ 345, 348 (CMA 1988)(question of improper re-referral under RCM 604(b) is not a jurisdictional matter).

■ Appellant's initial argument is that the Court of Criminal Appeals erred by not deciding the RCM 604(b) withdrawal question in his favor, as purportedly required by

1. RCM 604 provides:

   **Rule 604. Withdrawal of Charges**

   (a) *Withdrawal.* The convening authority or a superior competent authority may for any reason cause any charges or specifications to be withdrawn from a court-martial at any time before findings are announced.

   (b) *Referral* of withdrawn charges. *Charges which have been withdrawn from a court-mar-* *tial may be referred to another court-martial unless the withdrawal was for an improper reason.* Charges withdrawn after the introduction of evidence on the general issue of guilt may be referred to another court-martial only if the withdrawal was necessitated by urgent and unforeseen military necessity.

   (Emphasis added.)

this Court's decision in *Vanover*. He contends that case holds that a withdrawal is "improper" for purposes of RCM 604(b) when the " 'practical effect' of the convening authority's withdrawal and subsequent re-referral was to overturn the military judge's ruling." Final Brief at 6. He further asserts that the practical effect of the convening authority's actions was to allow the Government to go to trial after June 28, 1996, as requested by the Government and repeatedly denied by the military judge at the first court-martial. We disagree.

Appellant's second court-martial began on October 7, 1996, almost 4 months after the June 28, 1996, starting date requested by the Government and rejected by the trial judge. It also occurred after a new Article 32 investigation was conducted and a re-referral action taken by the convening authority, matters not expressly addressed by the trial judge's earlier rulings. Finally, as stated by the same trial judge who sat at both courts-martial, his earlier rulings did not implicitly preclude, nor did he intend to preclude, the burdensome procedural course of action chosen by the convening authority. In sum, this case is not *Vanover*, because a trial judge's ruling was not clearly flouted. In *Vanover*, an evidentiary ruling specifically prohibiting the admission of certain acts of uncharged misconduct at the first court-martial was flouted by charging the excluded misconduct at the second court-martial.

■ Appellant next argues that the Court of Criminal Appeals erred in deciding the RCM 604(b) question in violation of this Court's decision in *Petty v. Moriarty*, 20 USCMA 438, 43 CMR 278 (1971). He contends that *Petty* holds a convening authority's withdrawal action is improper and a re-referral is unlawful when they constitute an illegal interference with the exercise of the judicial function of granting or denying a continuance under Article 40, UCMJ, 10 USC § 840. *Petty*, 20 USCMA at 441, 43 CMR at 281. He finally asserts that such an evasion of the trial judge's continuance rulings occurred in his case and his conviction, therefore, should be set aside. We again disagree.

In *Petty*, this Court found the convening authority's actions were "illegal interference with the exercise of the judicial function" because they violated a particular Manual provision on continuances, *i.e.*, para. 67f, Manual for Courts–Martial, United States, 1969 (Revised edition).[2] That provision es-

2. Paragraph 67f states in pertinent part:

*Likewise, the convening authority may not direct the military judge or the president of a special court-martial without a military judge to reconsider a ruling on a motion to grant appropriate relief or a ruling granting a request for a continuance.* In returning the record of proceedings to the court, the convening authority will include a statement of his reasons for disagreeing, together with instructions to reconvene and reconsider the ruling with respect to the matter in disagreement. Except as provided in 122b(3) he will not refer to or include in his communication any factual information relative to the ruling in question which is not already a part of the record nor will he direct the court to consider any evidence or information other than that which is already in the record. To the extent that the matter in disagreement relates solely to a question of law, as, for example, whether the charges allege an offense cognizable by a court-martial, the military judge or the president of a special court-martial without a military judge will accede to the view of the convening authority. If the matter in disagreement relates to issues of fact, as, for example, whether an officer exercising general court-martial jurisdiction has unconditionally restored a suspected deserter to duty without trial with knowledge of the alleged desertion (68f), the military judge or special court-martial without a military judge will exercise his or its discretion in reconsidering the motion.

If the convening authority does not return the record for reconsideration, he will take the necessary action to conclude the case by publishing appropriate orders. See generally 82, 83, and 85b.

When a motion to grant appropriate relief has been granted by the military judge or the president of a special court-martial without a military judge, the convening authority may cause appropriate action to be taken to remedy the defect and, if appropriate, may return the record to the court or another court for appropriate further action. If he does not return the record to the court or arrange for trial by another court, as when a motion for change of venue has been granted (69e), he will dismiss the charges to which the motion relates. (Emphasis added.)

tablished a normal procedure for the convening authority to attempt to overturn a military judge's continuance decision, which did not include withdrawal and re-referral of charges. *See also United States v. Sears*, 20 USCMA 380, 383, 43 CMR 220, 223 (1971) (Manual provisions violated which prohibited convening authority from coercing military judge to change trial continuance rulings); *United States v. Knudson*, 4 USCMA 587, 593, 16 CMR 161, 167 (1954). Paragraph 67f was not in existence at the time of appellant's first or second court-martial; nor was it otherwise retained in the present Manual as established procedure for contesting a military judge's continuance ruling. *See United States v. Ware*, 1 MJ 282 (CMA 1976); *cf.* RCM 906(b)(1) and 908. Accordingly, the convening authority's withdrawal and re-referral actions did not constitute "illegal" interference with the judicial function in the sense of *Petty v. Moriarty, supra.*

■ Finally, we address specifically the assigned issue in appellant's case, *i.e.*, whether the lower appellate court erred in holding that the convening authority acted properly in his withdrawal and re-referral of charges. *See* RCM 604(b). Our case law has construed "proper" in this context as a legitimate command reason which does not "unfairly" prejudice an accused in light of the particular facts of a case. *See Blaylock*, 15 MJ at 195; *United States v. Jackson*, 1 MJ 242, 244 (CMA 1976); *United States v. Walsh*, 22 USCMA 509, 512, 47 CMR 926, 929 (1973). There is no dispute in this case that the convening authority accomplished his withdrawal and re-referral actions to accommodate the alleged victim's schedule and avoid the issuance of a subpoena. This clearly was a legitimate command objective or reason within the meaning of RCM 604(b). *See Koke*, 34 MJ at 315 (withdrawal for purposes of judicial economy by trying all known charges at once was a proper reason); *see generally* 42 USC § 10606.

We further hold that appellant was not substantially prejudiced by this withdrawal and re-referral. *See United States v. Koke, supra.* The second court-martial was the same type as the first court-martial (*i.e.*, a

general court-martial), and it was before the same military judge. *Cf. United States v. Fleming*, 18 USCMA 524, 40 CMR 236 (1969) (case referred to new court-martial and new law officer after previous law officer rejected plea); *Blaylock, supra* at 195 (re-referral to a court-martial authorized to impose a more severe punishment as retaliation for exercise of a legal right by an accused not a proper reason). Moreover, appellant did not lose the benefit of a favorable trial ruling as a result of the command's actions. The trial judge's earlier continuance denials created no legally cognizable right to a trial without the prosecution witness on June 20, 1996; nor can the speculative possibility of such an occurrence in any sense be considered substantial. Art. 59(a), UCMJ, 10 USC § 859(a); *cf. Vanover v. Clark* and *United States v. Fleming*, both *supra.*

Also, appellant was not in pretrial confinement during the withdrawal and re-referral process; nor did he make any pretrial motion at the second court-martial based on any prejudicial trial delay. *See United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (prejudice not prohibited but only undue prejudice). Finally, the military judge clearly dispelled on the record any suggestion of unlawful command influence by the convening authority with respect to himself and these proceedings ("I see no interference at all with this court in any manner."). *Cf. Vanover, supra* at 348, citing *Walsh, supra* at 512.

II

The decision of the United States Air Force Court of Criminal Appeals is affirmed. Collection of any forfeitures, and execution of the reduction in grade prior to the date of the convening authority's action, are hereby declared to be without legal effect. Any forfeitures already collected from appellant, and any pay and allowances withheld because

of the premature reduction in grade, will be restored. The record of trial is returned to the Judge Advocate General of the Air Force for appropriate action.[3]

**3.** A second issue was granted in this case. It is affirmed under the majority opinion of this Court in *United States v. Gorski*, 47 MJ 370 (1997); *cf.* *id.* at 376–77 (Sullivan, J., concurring in part and in the result); *see United States v. Menge*, 48 MJ 490 (1998).