*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**James B. HENDRIX, Private**
United States Army, Appellant

**No. 18-0133**
Crim. App. No. 20170439

Argued May 1, 2018—Decided June 19, 2018

Military Judge: Richard Henry

For Appellant: *Captain Benjamin J. Wetherell* (argued); *Lieutenant Colonel Christopher D. Carrier, Lieutenant Colonel Tiffany M. Chapman, Major Brendan R. Cronin*, and *Captain Cody Cheek.*

For Appellee: *Captain Catharine M. Parnell* (argued); *Colonel Tania M. Martin, Lieutenant Colonel Eric K. Stafford,* and *Captain Allison L. Rowley.*

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, OHLSON, and MAGGS, joined.

———————————

Judge SPARKS delivered the opinion of the Court.

Private (E-2) James B. Hendrix (Appellant) was charged with two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. Prior to trial, Appellant filed a motion to dismiss the charges with prejudice due to a violation of his right to a speedy trial under Rule for Courts-Martial (R.C.M.) 707. The military judge granted the motion and, finding subterfuge on the part of the Government, dismissed the charges with prejudice. The Government appealed the military judge's decision under Article 62, UCMJ, 10 U.S.C. § 862 (2012). The United States Army Court of Criminal Appeals determined that the military judge had abused his discretion and vacated the dismissal of the charges with prejudice. Appellant then petitioned to this Court and we granted review on the following issue:

> Whether the military judge abused his discretion by dismissing the charge and specifications with prejudice for a violation of R.C.M. 707.

We hold that the military judge erred in finding a violation of R.C.M. 707 and he therefore had no basis to dismiss the charge and specifications with prejudice. As elaborated upon below, the Government exercised no subterfuge or improper reason in dismissing and repreferring the charges against Appellant.

## I. BACKGROUND

The charges in this case stem from an unrestricted report made by Private EW, alleging that she had been sexually assaulted by Appellant. Because this case revolves around an R.C.M. 707 speedy trial violation, we have organized the factual background by date to create a timeline of events.

March 22, 2016 — The charged offenses allegedly occur.

November 29, 2016 — Appellant's commander prefers charges.[1]

December 8, 2016 — An Article 32, UCMJ, 10 U.S.C. § 832 (2012), preliminary hearing officer (PHO) is appointed.

December 12, 2016 — The PHO notifies counsel of his appointment and schedules the preliminary hearing for December 22, 2016.

December 13, 2016 — Defense counsel makes a written request for a delay in the proceedings for the period between December 22, 2016, and January 3, 2017 (thirteen days).

December 16, 2016 — The PHO grants the defense request and schedules the preliminary hearing for January 6, 2017.

January 6, 2017 — The Article 32, UCMJ, preliminary hearing occurs. Private EW does not participate.

January 24, 2017 — A memo attached to the PHO's report allows for twenty-five days of excludable delay, thirteen for the defense request and twelve days of administrative pretrial delay (December 12–21, 2016, and January 4–5, 2017). Defense counsel does not object to the contents of the PHO report.

---

[1] Appellant was charged with two specifications of committing a sexual act upon Private EW, penetration with his penis and penetration with his fingers, both without her consent.

February 10, 2017 — Private EW, through her special victim counsel (SVC), informs the Government that she does not want to participate as a witness at a court-martial.

February 24, 2017 — The SVC contacts the Government and tells them that Private EW has changed her mind and would be willing to participate in a court-martial.

March 14, 2017 — After meeting with trial counsel, Private EW changes her mind again and decides she does not want to participate in a court-martial.

March 21, 2017 — The SVC, via a victim input memorandum, informs Government counsel that Private EW would prefer that the matter not be referred to general court-martial, that she does not want to participate as a witness during a trial, and that she favors resolution through an administration separation board process.

March 29, 2017 — Day 120 of the original 120-day clock, not counting delays.

April 2, 2017 — The Government informs defense counsel that they plan to dismiss the charge.

April 11, 2017 — Day 120 including the thirteen-day, defense-requested delay.

April 14, 2017 — The convening authority dismisses the charge against Appellant.[2]

April 18, 2017 — The SVC notifies the Government that Private EW now wants to participate in a trial of Appellant.

April 21, 2017 — Identical charges are repreferred against Appellant by his company commander.

April 23, 2017 — What would have been day 120 including the administrative delay excluded by the PHO.

May 11, 2017 — The findings of the previous Article 32, UCMJ, hearing are adopted and the case is referred to general court-martial.

June 4, 2017 — Appellant files a motion to dismiss due to a speedy trial R.C.M. 707 violation.

June 8, 2017 — Appellant is arraigned and the military judge hears evidence on the motion to dismiss.

---

[2] The record does not indicate that the initial charge was ever referred to court-martial.

July 27, 2017 — The military judge issues a written ruling granting Appellant's motion and dismissing the charge with prejudice.

## II. STANDARD OF REVIEW

"In an Article 62, UCMJ, appeal, this Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial." *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017) (citing *United States v. Buford*, 74 M.J. 98, 100 (C.A.A.F. 2015)). "[W]e are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." *Id.*

We review de novo the question of whether an accused received a speedy trial. *United States v. Leahr*, 73 M.J. 364, 367 (C.A.A.F. 2014) (citing *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003)).

## III. APPLICABLE LAW

Under the relevant portion of R.C.M. 707, an accused must be brought to trial within 120 days of preferral of charges. R.C.M. 707(a)(1). If charges are dismissed and then repreferred, a new 120-day period begins from the date of repreferral. R.C.M. 707(b)(3)(A). Failure to comply with R.C.M. 707 will result in dismissal of any affected charges. R.C.M. 707(d). The court decides whether dismissal will be with or without prejudice. R.C.M. 707(d)(1).

To determine whether Appellant's R.C.M. 707 rights were violated by the convening authority's dismissal and repreferral, we apply the legal standard from *Leahr*, 73 M.J. at 369. "Absent a situation where a convening authority's express dismissal is either a subterfuge to vitiate an accused's speedy trial rights, or for some other improper reason, a clear intent to dismiss will be given effect." *Id.* *Leahr* elaborates on our statement in *United States v. Tippit* that "[o]nce charges are dismissed, absent a subterfuge, the speedy-trial clock is restarted." 65 M.J. 69, 79 (C.A.A.F. 2007) (alteration in original) (citing *United States v. Anderson*, 50 M.J. 447, 448 (C.A.A.F. 1999)). In *Leahr*, we defined a proper reason (in the context of a discussion of R.C.M. 604 which governs withdrawal of charges from court-martial) as "a legitimate command reason which does not

'unfairly prejudice' an accused." 73 M.J. at 369 (internal quotation marks omitted) (citation omitted).[3]

When a term is not statutorily defined, we accord it its ordinary meaning. *United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016). In assessing the presence or lack of subterfuge, the lower court relied upon the ordinary meaning of the term, specifically a dictionary definition of subterfuge as " 'deception by artifice or stratagem in order to conceal, escape, or evade.' " *United States v. Hendrix*, No. ARMY Misc. 20170439, 2017 CCA LEXIS 769, at *7, 2017 WL 6492503, at *3 (A. Ct. Crim. App. Dec. 14, 2017) (citation omitted) (unpublished).

## IV. DISCUSSION

We disagree with the military judge's conclusion that the convening authority's dismissal of charges with the intent to reprefer implies subterfuge or an improper reason. Rather, dismissal and repreferral are fully permissible under the provisions of R.C.M. 707. *See also Leahr*, 73 M.J. at 368. Consulting the record, we can find no signs that confirm the military judge's finding of subterfuge on the part of the Government because there is no indication the Government was engaged in any sort of deception or dismissed the charges with the intention of evading or escaping the 120-day clock. To the contrary, the Government appears to have behaved as if they were dismissing for the exact reasons they indicated, because without Private EW's participation they did not have a strong case. The convening authority was acting on the recommendation of the staff judge advocate (SJA), who advised "dismissing the charge and its specifications preferred against [Appellant] without prejudice" since the victim in the case declined to participate in prosecution. The SJA emphasized that Private EW's testimony was essential to proving that Appellant sexually assaulted her. In addition, following the dismissal, the convening authority referred the matter to a subordinate commander to take any administrative action he found appropriate. This step indicates to us that, without Private

---

[3] Though the change does not impact this case, we do note that the 2018 amendments to the *Manual for Courts-Martial, United States* will modify R.C.M. 707 to expressly incorporate the judicially created "subterfuge" exception. Exec. Order No. 13,825, 83 Fed. Reg. 9889, 9969 (Mar. 8, 2018) (effective Jan. 1, 2019).

EW's cooperation, the Government had no intention of prosecuting the case.

Repreferral occurred only after Private EW changed her mind and informed the Government she would participate in the court-martial process. It is true that, as the military judge points out, no new evidence was found and no new crimes were charged between dismissal and repreferral. However, the fact that the complaining witness changed her mind about testifying dramatically changed the strength of the Government's case. It makes sense that, given this development, the Government would decide to pursue charges after all. As even the military judge found, the fact that repreferral occurred within days of Private EW changing her mind signals that her lack of participation was the driving reason behind the Government's dismissal and that the Government's repreferral of the charges was consistent with Private EW's decision to finally testify.

Unlike the military judge, we are not troubled by the fact that the Government waited until April 14 to actually dismiss the charges. As late as February 24, Private EW had fluctuated in her willingness to participate, revealing through her SVC that she might participate in prosecution before changing her mind again in mid-March.[4] According to the PHO's accounting of the days, the 120 days was set to expire on April 23, nine days after the actual dismissal and three weeks after the Government notified defense counsel of its intention to dismiss. At no point did the Government have reason to believe it was drawing dangerously close to the expiration of the 120-day period.

We also do not share the military judge's concern that repreferral under these circumstances placed Appellant in a state of "perpetual jeopardy." Allowing for a one-time dismissal without prejudice followed by repreferral of the charges because the victim changed her mind is not the equivalent of allowing this process to happen multiple times, creating a perpetual cycle. The military judge is free to

---

[4] Appellant briefly discusses and questions the Government's reasons for originally preferring the charges when they did not have Private EW's full cooperation, alleging they hoped to facilitate Appellant's making a request for administrative separation. However, Appellant's reasoning is based entirely on supposition and does not factor into this Court's examination of the granted issue.

decide at any point whether there is subterfuge or an improper reason behind a dismissal and whether the speedy trial clock can start anew. Further, we are confident the military judge will recognize when circumstances begin to improperly infringe upon the accused's Sixth Amendment rights. Not only does R.C.M. 707 give the military judge authority to make this determination at any time, the Sixth Amendment right to a speedy trial protects the accused against such perpetual prosecution.[5] Finally, while we conclude that dismissal and repreferral under these circumstances is appropriate, we need not decide in this case whether or when multiple dismissals might be deemed improper.

Both the SJA and Government counsel iterated that the decision to dismiss the charges was prompted by Dep't of Defense, Instr. 6495.02, Sexual Assault Prevention and Response (SAPR) Program Procedures (Mar. 28, 2013) [hereinafter DoDI 6495.02]. The Instruction reads, in relevant part, that:

> [T]he victim's decision to decline to participate in an investigation or prosecution should be honored by all personnel charged with the investigation and prosecution of sexual assault cases .... If at any time the victim who originally chose the Unrestricted Reporting option declines to participate in an investigation or prosecution, that decision should be honored.

DoDI 6495.02 Encl. 4, para. 1(c)(1). Though adherence to this Instruction does not impact the legality — or lack thereof — of the Government's actions, we will note that dismissal further along in the process, when Private EW clarified she did not want to participate, was in line with DoDI 6495.02 as was the subsequent repreferral when Private EW changed her mind.

The military judge found that the PHO had improperly excluded the twelve days of administrative delay from the 120-day period and, by extension, that the convening authority dismissed the original charge three days after the R.C.M. 707 clock had run out. We leave for another day the question of whether the convening authority's dismissal did

---

[5] Both parties were in agreement that the current case does not violate Appellant's constitutional Sixth Amendment rights.

or must occur within R.C.M. 707's allotted 120 days. It is our opinion that all issues surrounding the expiration of the 120-day clock were waived when Appellant failed to object to the twelve days of administrative delay at the time of the PHO's preliminary report[6] and when the military judge failed to make findings of fact or conclusions of law regarding whether Appellant had good cause for his delayed challenge to the PHO's excludable delay determination. R.C.M. 405(k).

## V. CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed. The stay of proceedings issued by this Court on March 9, 2018, is hereby lifted. The record is remanded to the Judge Advocate General of the Army for return to the military judge for further proceedings consistent with this opinion.

---

[6] R.C.M. 405(j)(5) states that any objection to the PHO's preliminary report shall be submitted to the convening authority through the PHO within five days. Defense counsel did not make any such objection in this case.